This is a breach of contract case.
David Santos is the owner of a printing and office supply business. In February 1989 Santos was approached by a sales representative for WQEN-FM (Q-104) radio station, which is owned by Big Thicket Broadcasting Company. Santos subsequently entered into a reciprocal trade agreement with Big Thicket, whereby he agreed to provide $2,400 worth of printing and supplies in exchange for $2,400 worth of advertising, with mutual performance to be completed within one year.
Santos provided Big Thicket with $2,400 in printing services and office supplies within eight months. Santos continued to fill orders for printing and supplies thereafter and provided invoices for this work. Big Thicket did not pay any money to Santos at any time.
By May 1990 Santos had provided Big Thicket with some $9,947.70 in printing and supplies, but had not yet received $2,400 in advertising. Santos demanded payment in cash from Big Thicket for the printing performed beyond the required $2,400 worth. Big Thicket refused to provide such payment. Santos subsequently filed an action, seeking the balance of $2,400 owed under the trade agreement, as well as payment in cash for the printing goods supplied to Big Thicket after February 28, 1990. Santos also requested a reasonable attorney's fee.
Following an ore tenus proceeding, the trial court entered judgment for Santos and awarded damages of $9,947.70 and $958.74 in attorney's fees, with 12% interest thereon. Big Thicket appeals from that judgment.
The trade agreement entered into by the parties provides as follows:
 "WAAX Radio agrees to trade air time and/or production services with Santos Printing Company in the amount of $2,400 for the same amount $2,400 of printing services from Santos Printing Co. subject to the following conditions:
"1. Trade will be dollar for dollar.
 "2. Schedules will be accepted subject to availability by both parties.
 "3. Trade balances must be depleted by 2/28/90 by both parties.
 "4. Each party will furnish the other with a monthly invoice."
The record shows that soon after the execution of the trade agreement, Santos provided printing services for WAAX-AM and WQEN-FM, both of which were owned by Big Thicket. These services were documented with invoices which show that Big Thicket depleted its allotment of $2,400 worth of printing within seven months. Big Thicket continued to place orders for printing after this allotment had been reached and Santos filled these orders.
Steve DeBerry, general advertising manager of WAAX-AM, testified at trial that Big Thicket provided about $1,000 worth of advertising for Santos between February 28, 1989 and February 29, 1990. Around the time of the contract's date of expiration, DeBerry met with Santos concerning the trade agreement. At trial, DeBerry testified that Santos acknowledged that Big Thicket had far exceeded its $2,400, but said that there "was no problem" with the arrangement. DeBerry further testified *Page 1243 
that Santos agreed to let DeBerry know when the arrangement did become a problem. Santos denied having made these statements. It is undisputed that Santos refused to enter into another written trade agreement with DeBerry at that time but continued to fill Big Thicket's printing orders thereafter.
The record reveals that in May 1990 the truck Santos used for delivering orders was wrecked. Santos subsequently approached Paul Nugent, the general manager of WAAX-AM and WQEN-FM, and suggested that Big Thicket provide him with a new truck to satisfy Big Thicket's debt for printing done beyond the $2,400 allotment. Nugent rejected this idea and Santos then demanded payment for the extra printing he had performed.
Nugent acknowledged that Big Thicket had far exceeded the limits of the agreement and suggested that Santos accept advertising in lieu of cash for the additional work he did. Santos refused to enter into another written trade agreement and requested payment in cash for the additional work. After this meeting, Santos received a letter from Nugent, which stated in pertinent part:
 "Per our conversation this morning, allow me to authorize the use of your unused trade time on WAAX-AM and WQEN-FM.
 "Agreeing with your total of $9,912.54 in printing services, I will extend the trade advertising for Santos Printing for one year effective June 1, 1990."
Santos testified at trial that he phoned Nugent after receiving this letter and again refused to enter into another trade agreement. Santos subsequently filed suit against Big Thicket.
Big Thicket argues that the contract it had with Santos was modified to extend the original terms that were agreed upon. Big Thicket points out that parties to a written contract may by mutual assent execute an oral modification of the contract.Arnold v. Campbell, 398 So.2d 301 (Ala.Civ.App. 1981). Mutual assent may be implied by the acts of the parties or by surrounding circumstances. Arnold. Big Thicket urges that, by continuing to supply printing well after the $2,400 limit had been reached, Santos implicitly agreed to extend the agreement between the parties for one year.
It is undisputed that Santos completed the required $2,400 worth of printing within eight months and then continued to fill additional orders from Big Thicket. However, the parties' trade agreement did not provide that all printing services performed by Santos for Big Thicket from February 28, 1989 to February 28, 1990 would be reimbursed with advertising. On the contrary, the agreement specifically set a $2,400 "dollar-for-dollar" limit on the trade agreement and allowed a maximum of one year for mutual performance. The contract did not prevent Santos from selling printing to Big Thicket forcash within that year, once he had completed $2,400 worth of printing under the contract. Under the contract, Santos was not bound to accept advertising in exchange for printing services beyond the $2,400 limit; rather, he was free to thereafter establish a business relationship with Big Thicket on a cash basis, regardless of whether Big Thicket had completed its performance at the time Santos completed his.
Near the time of the contract's expiration, Santos specifically declined to extend the agreement when he was asked to do so by DeBerry. Although Santos did not make a specific demand of cash payment for his services until May 1990, he did not perform any further printing services for Big Thicket after it refused to pay him. Santos repeatedly testified at trial that he never intended to become bound to any trade agreement in excess of $2,400 and that he refused all offers to do so. Santos denied that he ever told DeBerry that he had "no problem" with continuing the trade agreement past its expiration date.
The question of whether there has been mutual assent between the parties is an issue to be determined by the trier of fact.Lightsey v. Orgill Bros. Co., 454 So.2d 1002 (Ala.Civ.App. 1984). In an ore tenus proceeding, it is the duty of the trial court to resolve conflict in testimony and render judgment accordingly. Jones v. LeFlore, 421 So.2d 1287 (Ala.Civ.App. 1982). Where the trial court resolves *Page 1244 
a factual issue on conflicting evidence, the reviewing court may not reverse it if there is any credible evidence to support the judgment. Jones v. Jones, 470 So.2d 1207 (Ala. 1985).
The parties are in sharp dispute as to whether Santos orally agreed to a modification of the contract by telling DeBerry that he had "no problem" with extending the original agreement. However, it is uncontroverted that Santos refused to agree to a written modification, both at the time of the contract's expiration and again in May 1990.
From this and other credible evidence in the record, the trial court could have found that the parties never reached a point of mutual assent to a modification of the trade agreement. Therefore, in accordance with our narrow standard of review, we must affirm the trial court's judgment on this issue.
However, in its order the court awarded Santos $9,947.70, which is the value of all of the printing done by Santos for Big Thicket. The record shows that Big Thicket did provide $1,000 worth of advertising for Santos and the trial court erred in failing to subtract this amount from the total cost of the printing. Moreover, the record shows that Big Thicket failed to provide the additional $1,400 in advertising due under the contract only because Santos failed to place orders for it.
A party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure.Dixson v. C. G. Excavating, Inc., 364 So.2d 1160 (Ala. 1978). Because Santos failed to place timely orders for the advertising under the agreement, he is not due money damages of $1,400 for Big Thicket's failure to fully perform under the contract.
We note that, in his pleadings, Santos did not seek money damages for the $1,400 in advertisements still due under the contract; rather, he sought specific performance from Big Thicket. Santos did not dispute that Big Thicket provided him with $1,000 worth of advertising. At trial and in brief, Big Thicket has repeatedly stressed its willingness to provide the remaining $1,400 in advertising whenever Santos places his order for it.
In light of the above, we find that the trial court erred in failing to subtract $2,400 from the total cost of the printing done for Big Thicket. We therefore remand this issue to allow the trial court to recalculate the amount of damages due to Santos.
In the second issue raised on appeal, Big Thicket argues that the trial court erred in awarding attorney's fees to Santos because the trade agreement did not provide for attorney's fees. On the back of each invoice sent to Big Thicket from Santos, there are printed provisions that establish Santos's right to bring an action for collection of the amount owed, including attorney's fees.
We agree with Big Thicket that these printed provisions were superseded by the written trade agreement, which did not provide for attorney's fees or a right of collection. However, only the first $2,400 of Big Thicket's printing orders were filled under the auspices of the trade agreement. After this limit had been reached, Big Thicket's additional orders for printing were independent from the trade agreement. These additional orders were regular business transactions that were subject to the provisions printed on the back of the invoices and for which Santos could properly seek collection. We therefore find no error in the trial court's award of attorney's fees for this collection.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
All the Judges concur. *Page 1245